UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

KAREN J. BIRCH,

                              Plaintiff,

v.
                                                          5:12-CV-999 (GTS/ATB)

JOHN M. BECKER; JOHN SALKA; RALPH M.
MONFORTE; DANIEL S. DEGEAR; PRICILLA
SUITS; RUSSELL L. CARY; DAVID L COYE;
EVE ANN SHWARTZ; JAMES S. GOLDSTIEN;
ROCCO J. DiVERONICA; DARRIN P. BALL;
RONALD C. BONO; ROGER D. BRADSTREET,
SR.; RICHARD BARGABOS; ALEXANDER R.
STEPANSKI; SCOTT A. HENDERSON; JOHN
A. REINHARDT; JAMES V. RAFTE; LEWIS
CARINCI; TINA WAYLAND-SMITH; RYAN
AYLWARD; and THE COUNTY OF MADISON,
N.Y.,

                              Defendants.
_____

APPEARANCES:                                    OF COUNSEL:

OFFICE OF JONATHAN LOVETT                        JONATHAN LOVETT, ESQ.
  Counsel for Plaintiff
305 Old Tarrytown Road, 2nd Floor
White Plains, New York 10603

HANCOCK ESTABROOK, LLP                          JANET D. CALLAHAN, ESQ.
  Counsel for Defendants                        JAMES P. YOUNGS, ESQ.
1500 AXA Tower I
100 Madison Street
Syracuse, New York 13202

GLENN T. SUDDABY, United States District Judge

## DECISION and ORDER

        Currently before the Court, in this civil action filed by the Madison County Director of

Probation Karen J. Birch ("Plaintiff") against the County of Madison and the 20 above-captioned

individuals ("Defendants"), is Defendants' motion for summary judgment.  (Dkt. No. 43.)  For

the reasons set forth below, Defendants' motion is granted.

## I. RELEVANT BACKGROUND

### A. Plaintiff's Claims

Generally, liberally construed, Plaintiff's Complaint alleges that, between approximately November 29, 2011, and June 19, 2012, in Madison County, New York, Defendants took various wrongful actions against her in connection with a work-related complaint against her, including but not limited to (1) placing her on indefinite paid administrative leave, (2) imposing gag orders on her, (3) reviewing evidence against her *ex parte* before conducting a disciplinary hearing, (4) deciding the issue of whether to terminate her employment before conducting the disciplinary hearing, (5) filing disciplinary charges against her (and imposing a 30-day unpaid suspension) in retaliation for her filing a charge of sex-based discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), and (6) directing that the public be excluded from that disciplinary hearing. (*See generally* Dkt. No. 1, at ¶¶ 1-19.)

Based on these factual allegations, Plaintiff's Complaint asserts the following five causes of action: (1) a cause of action claiming that all Defendants (except Smith and Aylward) violated her right to due process under the Fourteenth Amendment by reviewing evidence against her *ex parte*, and deciding the issue of her termination, before conducting a disciplinary hearing; (2) a cause of action claiming that all Defendants (except Smith and Aylward) violated her right to free speech under the First Amendment by requesting, embracing, adopting and ratifying a gag order placed on her by a hearing officer in May 2012; (3) a cause of action claiming that all Defendants violated her right to free speech under the First Amendment, and to due process under the Fourteenth Amendment, by preventing her, through gag orders of November 2011 and

February 2012, from communicating with County personnel on a matter of public concern, and preparing a defense to the disciplinary charges; (4) a cause of action claiming Defendant County of Madison violated her right to be free from retaliation under Title VII of the Civil Rights Act of 1964 "Title VII"), by suspending her for 30 days without pay for having engaged in a protected activity; and (5) a cause of action claiming that Defendant County of Madison violated her right to be free from retaliation under Title VII, by filing disciplinary charges against her for having engaged in a protected activity. (*Id.* at ¶¶ 20-31.)

As relief for these alleged violations, Plaintiff seeks the following: (1) an award of compensatory damages in the sum of no less than $500,000, plus punitive damages and reasonable attorney's fees, on her first, second and third claims; and (2) an award of compensatory damages in the sum of no less than $500,000, plus punitive damages and reasonable attorney's fees, on her fourth and fifth claims. (*Id.* at ¶ 31.)

### B. Undisputed Material Facts

Unless followed by record citations, the following facts were asserted and supported by Defendants in their Statement of Material Facts, and either expressly admitted or denied without an accurate record citation by Plaintiff in her response thereto. (*Compare* Dkt. No. 43, Attach. 41 *with* Dkt. No. 46, Attach. 1.)

### 1. Plaintiff's Supervision of Swidowski

Plaintiff was Director of Probation for Madison County from May of 2006 until her termination in May of 2013. Joanne Swidowski worked under the supervision of Plaintiff from the time Swidowski was hired on June 29, 2008, until the time Swidowski resigned on May 31, 2011. (Dkt. No. 43, Attach. 3, at 10-11 [attaching pages "9" and "10" of Swidowski Depo. Tr.].) In her position, Swidowski's primary function was to write Presentence Investigation Reports ("PSIs"), generally in misdemeanor cases.

Among many other cases, Swidowski worked on Stanley Derdzinski's case. Derdzinski's case did not come to Swidowski through the ordinary fashion (i.e., placement in her mailbox or delivery to her supervisor), but through an in-person assignment in Plaintiff's office. (Dkt. No. 43, Attach. 3, at 24-25 [attaching pages "23" and "24" of Swidowski Depo. Tr.].)  The case was considered to be a high-profile one.  (Dkt. No. 43, Attach. 3, at 25 [attaching page "24" of Swidowski Depo. Tr.].)  Derdzinski was a repeat offender with a criminal history of domestic violence, including reportedly having violated orders of protection and tried to hire someone to kill his ex-wife.  (*Id*.)

During the assignment, Swidowski became concerned that Derdzinski had behaved inappropriately toward her, most notably on one occasion on which she had run into him in the community, and he had obtained personal information about her, including her address.  (Dkt. No. 43, Attach. 3, at 28-30, 43, 56 [attaching pages "27," "28," "29," "42" and "55" of Swidowski Depo. Tr.].)  In addition, Derdzinski made what Swidowski perceived to be repeated threats against her, including a threat to have her killed.  (Dkt. No. 43, Attach. 3, at 59-60, 79-84, 93-96 [attaching pages "58," "59," "78" through "83," and "92" through "95" of Swidowski Depo. Tr.].)

On several occasions, Swidowskis requested her removal from Derdzinski's case.  She assumed Plaintiff would remove her from the case, based on the threats of which she had complained.  Indeed, following Swidowski's completion of an addendum to Derdzinski's PSI Report, Plaintiff promised Swidowski in writing that, if Derdzinski's case came back on the Probation Department's caseload, Plaintiff would assign Derdzinski's case to another probation officer.  (Dkt. No. 43, Attach. 3, at 39-42 [attaching pages "38" through "41" of Swidowski

Depo. Tr.]; Dkt. No. 43, Attach. 7 [attaching email message from Plaintiff to Swidowski dated March 9, 2010].)  However, when Derdzinski's case came back on the Probation Department's caseload, Plaintiff did not assign Derdzinski's case to another probation officer.

Swidowski resigned on May 31, 2011, stating in writing that her resignation was in part "[d]ue to current and future concerns for [her] personal safety."  (Dkt. No. 43, Attach. 23, at 2 [attaching resignation letter]; *cf.* Dkt. No. 43, Attach. 3, at 110 [attaching page "109" of Swidowski Depo. Tr.]; Dkt. No. 46, Attach. 2, at ¶ 19 [Decl. of Birch, stating that, upon Swidowski's resignation, Swidowski had advised her that her resignation was, in part, due to the fact that "she was tired of running into probationers in the community"].)

### 2. Board's Investigation of Plaintiff

On November 28, 2011, a meeting occurred between Swidowski and Board of Supervisors Chairman John Becker (and others), which Swidowski had requested; during the meeting, Swidowski came forward with a personal complaint against Plaintiff.  (Dkt. No. 43, Attach. 3, at 124-125, 129 [attaching pages "123," "124" and "128" of Swidowski Depo. Tr.]; Dkt. No. 43, Attach. 4, at 2-3 [attaching Ltr. from Swidowski's Attorney dated Nov. 30, 2011].)

On November 29, 2011, Becker met with Plaintiff, along with, inter alia, Ryan Aylward (Director of the County's Labor Relations Department) and Tina Wayland-Smith (First Assistant County Attorney).  (Dkt. No. 43, Attach. 24, at ¶ 12 [Becker Decl.]; Dkt. No. 43, Attach. 2, at 141-42 [attaching pages "140" and "141" of Birch Depo. Tr.].)  At the meeting, Becker advised Plaintiff that a complaint had been made against her, that they needed to do an investigation of the Probation Department, that he was putting her on leave, and that she was being escorted from the office.  (Dkt. No. 43, Attach. 2, at 142 [attaching page "141" of Birch Depo. Tr.].)  Alyward

advised Plaintiff that she was "not allowed to speak with anybody." (*Id.*) Similarly, Wayland-Smith advised Plaintiff that she was "not to talk to anybody." (*Id.*) Finally, Becker gave Plaintiff a letter (marked "hand delivered"). (Dkt. No. 43, Attach. 5 [attaching Ltr. from Birch to Plf. dated Nov. 29, 2011]; Dkt. No. 43, Attach. 24, at ¶ 12 [Becker Decl.].)

The letter advised Plaintiff that she was being "placed on paid administrative leave effective immediately pending the outcome of an internal investigation of a work-related complaint against [her]." (*Id.*) The letter also advised Plaintiff as follows: "If you have any questions while you are on leave, please do not contact your staff or other county employees/ officials/Board members. All questions should be directed to me, or in my absence, Mark Scimone [the Administrative Assistant to the Chairman of the Board]." (Dkt. No. 43, Attach. 5 [attaching Ltr. from Birch to Plf. dated Nov. 29, 2011].)

After the meeting of November 28, 2011, the County's outside labor counsel, John Corcoran, retained a firm to investigate the complaint brought by Swidowski. (Dkt. No. 43, Attach. 24, at ¶¶ 11, 13 [Becker Decl.].) Between December 2011 and January 2012, the investigator interviewed 15 current and former staff members of the Probation Department (including Plaintiff), taking their written statements. (Dkt. No. 43, Attach. 24, at ¶ 13 [Becker Decl.]; Dkt. No. 43, Attach. 6, at 2 [attaching notes for meeting]; Dkt. No. 43, Attach. 2, at 165-66 [attaching pages "164" and "165" of Birch Depo. Tr.].)

On February 14, 2012, the Board of Supervisors met with Corcoran to preliminarily review the investigator's findings and to discuss the possibility of offering Plaintiff an employment-separation agreement. (Dkt. No. 43, Attach. 24, at ¶ 13 [Becker Decl.]; Dkt. No. 43, Attach. 6, at 2-3 [attaching notes for meeting].)

On February 15, 2012, a meeting was held between the County's Government Operations Committee and its Criminal Justice Committee (which had joint jurisdiction over the Probation Department); during an executive session of the meeting, the substance of the statements taken by the investigator were reviewed. (Dkt. No. 43, Attach. 24, at ¶ 14 [Becker Decl.]; Dkt. No. 43, Attach. 6, at 3 [attaching notes for meeting].)

On February 27, 2012, Plaintiff met with Becker, Corcoran, Wayland-Smith, and Darrin Ball (the Chairman of the Criminal Justice Committee). (Dkt. No. 32, Attach. 2, at 171-72 [attaching pages "170" and "171" of Birch Depo. Tr.]; Dkt. No. 43, Attach. 13, at 43-44 [attaching email messages confirming date of meeting].) At the meeting, Wayland-Smith advised Plaintiff of Swidowski's complaint against her, described the nature of that complaint, reported that the County had arranged for an investigation, described the nature of that investigation, and informed her that the Board of Supervisors had reviewed the investigation findings and (based on those findings) had lost faith and confidence in her ability to continue to manage the activities of the staff in the Probation Department. (Dkt. No. 32, Attach. 2, at 173, 175-78 [attaching pages "172," and "174" through "177," of Birch Depo. Tr.]; Dkt. No. 43, Attach. 6, at 2-3 [attaching notes for meeting]; Dkt. No. 46, Attach. 7, at 7, 9-18 [attaching pages "6," and "8" through "17," of Wayland-Smith Depo. Tr.]; Dkt. No. 43, Attach. 24, at ¶ 15 [Becker Decl.].)

Plaintiff was given an opportunity to speak at the meeting. (Dkt. No. 32, Attach. 2, at 176 [attaching page "175" of Birch Depo. Tr.]; Dkt. No. 43, Attach. 6, at 2-3 [attaching notes for meeting]; Dkt. No. 46, Attach. 7, at 16 [attaching page "15" of Wayland-Smith Depo. Tr.].) However, Plaintiff made no substantive response; rather, she stated sarcastically that "it sounds

like you have it all figured out as to what's going on" (or words to that effect). (Dkt. No. 32, Attach. 2, at 176-76 [attaching pages "175" and "176" of Birch Depo. Tr.].)

There was no mention of any potential disciplinary charges at the meeting. (Dkt. No. 32, Attach. 2, at 177 [attaching page "176" of Birch Depo. Tr.]; Dkt. No. 43, Attach. 6, at 2-3 [attaching notes for meeting]; *see generally* Dkt. No. 46, Attach. 7 [attaching Wayland-Smith Depo. Tr.].) Instead, Wayland-Smith presented her with the Board of Supervisors' proposed employment-separation agreement, which offered severance pay and other benefits intended to voluntarily sever her employment with the County. (Dkt. No. 32, Attach. 2, at 178, 180-81 [attaching pages "177," "179" and "180" of Birch Depo. Tr.]; Dkt. No. 43, Attach. 6, at 2-3 [attaching notes for meeting]; Dkt. No. 46, Attach. 7, at 7-8 [attaching pages "6" and "7" of Wayland-Smith Depo. Tr.]; Dkt. No. 43, Attach. 24, at ¶ 15 [Becker Decl.].) Plaintiff was advised she had 21 days (or until March 20, 2012) by which to accept the employment-separation agreement. (Dkt. No. 32, Attach. 2, at 178, 180 [attaching pages "177" and "179" of Birch Depo. Tr.]; Dkt. No. 43, Attach. 6, at 2-3 [attaching notes for meeting]; Dkt. No. 46, Attach. 7, at 16 [attaching page "15" of Wayland-Smith Depo. Tr.]; Dkt. No. 43, Attach. 24, at ¶ 16 [Becker Decl.].)

Toward the end of the meeting, Wayland-Smith advised Plaintiff that any further communications concerning the proposed separation agreement should be directed to a designated County representative. (Dkt. No. 43, Attach. 6, at 3 [attaching notes for meeting]; Dkt. No. 43, Attach. 2, at 180 [attaching page "179" of Birch Depo. Tr.]; *cf.* Dkt. No. 1, at ¶ 7 [Compl., alleging that forbidden communications were limited to "anything relating to the disciplinary investigation"].)

### 3.    Plaintiff's EEOC Charge Against the County

At some point between February 27, 2012, and March 8, 2012, Plaintiff retained an attorney, Jonathan Lovett (with whom she had had contact before being interviewed by the investigator).  (Dkt. No. 43, Attach. 2, at 167, 173-74 and 182 [attaching pages "166," "172," "173," and "181"" of Birch Depo. Tr.].)

On March 8, 2012, Plaintiff filed an EEOC charge against the County.  In her charge, Plaintiff asserted claims of retaliation and discrimination against under Title VII, 42 U.S.C. § 2000e *et seq*.   Specifically, Plaintiff alleged that the County's act of placing her on paid administrative leave (on November 29, 2011) was a punitive measure, which was intended to "silence [her] by reason of [her] gender and to prevent [her] from further advocating in favor of the rights of female crime victims" by expressing her opinion that the Madison County District Attorney was "guilty of malfeasance" that was "grounded in anti-female gender bias."  (Dkt. No. 43, Attach. 8 [attaching EEOC charge].)

On March 13, 2012, Plaintiff's counsel sent a letter to the County advising it that Plaintiff had filed a charge with the EEOC and that no retaliatory action should be taken against her; however, because Lovett did not provide the County with a copy of the charge, the County did not know what the alleged basis of the charge was.  (Dkt. No. 43, Attach. 9, at 3 [attaching Ltr. from Lovett dated March 13, 2012]; Dkt. No. 43, Attach. 24, at ¶ 17 [Becker Decl.].)

On March 19, 2012, Plaintiff rejected the Board of Supervisors' employment-separation agreement, by letter from Lovett.  (Dkt. No. 43, Attach. 24, at ¶ 16 [Becker Decl.].)

### 4.    Board's Suspension of Plaintiff Without Pay for 30 Days

On April 10, 2012, the Board of Supervisors met in executive session to review the investigation findings regarding Plaintiff and to determine whether there was cause to bring

disciplinary charges against her. The Board unanimously (with one absence) passed Resolution No. 130-12, determining that grounds existed to bring charges of incompetence and/or misconduct against Plaintiff in accordance with Section 75 of the New York Civil Service Law. The Board based its decision on the information uncovered by the investigation. (Dkt. No. 43, Attach. 10, at 2 [attaching copy of Resolution]; Dkt. No. 43, Attach. 25, at ¶ 2 [Bargabos Decl.]; Dkt. No. 43, Attach. 26, at ¶ 2 [Bono Decl.]; Dkt. No. 43, Attach. 27, at ¶ 2 [Bradstreet Decl.]; Dkt. No. 43, Attach. 28, at ¶ 2 [Carinci Decl.]; Dkt. No. 43, Attach. 30, at ¶ 2 [Degear Decl.]; Dkt. No. 43, Attach. 31, at ¶ 2 [DiVeronica Decl.]; Dkt. No. 43, Attach. 32, at ¶ 2 [Goldstein Decl.]; Dkt. No. 43, Attach. 33, at ¶ 2 [Henderson Decl.]; Dkt. No. 43, Attach. 34, at ¶ 2 [Monforte Decl.]; Dkt. No. 43, Attach. 35, at ¶ 2 [Rafte Decl.]; Dkt. No. 43, Attach. 36, at ¶ 2 [Reinhardt Decl.]; Dkt. No. 43, Attach. 37, at ¶ 2 [Salka Decl.]; Dkt. No. 43, Attach. 38, at ¶ 2 [Stepanski Decl.]; Dkt. No. 43, Attach. 39, at ¶ 2 [Suits Decl.]; Dkt. No. 43, Attach. 43, at ¶ 3 [Coye Decl.].)

As a result, on April 12, 2012, Becker sent a Notice of Charge to Plaintiff advising her of the following, inter alia: that five charges were being brought against her; that she was entitled to a hearing on the charges and to be represented by an attorney at the hearing; that the Board of Supervisors had designed Judith A. La Manna, Esq., as the hearing officer; and that, pending the hearing, Plaintiff was being suspended without pay for 30 days effective April 12, 2012, pursuant to Section 75 of the N.Y. Civil Service Law. (Dkt. No. 43, Attach. 11 [attaching Notice of Charge]; Dkt. No. 43, Attach. 24, at ¶ 20 [Becker Decl.]; Dkt. No. 43, Attach. 2, at 207-08, 210-11 [attaching pages "206," "207," "209," and "210" of Birch Depo. Tr.]; Dkt. No. 46,

Attach. 2, at ¶ 10 [Birch Decl.].)[1]

The five charges against Plaintiff were as follows: (1) a charge that Plaintiff exercised poor judgment under circumstances involving a probation officer whose life had been threatened by a probationer; (2) a charge that Plaintiff failed to remove the probation officer from writing a pre-sentence investigation report concerning the probationer under circumstances giving rise to an actual or potential conflict of interest; (3) a charge that Plaintiff's failure to remove the probation officer from writing the aforesaid pre-sentence investigation report created a substantial risk of violating Section 350.5 of the Division of Probation's Regulations concerning the required impartiality and fairness of the probation investigative and reporting processes; (4) a charge that Plaintiff mismanaged a situation involving the alleged workplace intoxication of a subordinate probation supervisor; and (5) a charge that Plaintiff had demonstrated poor leadership of the County's Probation Department. (Dkt. No. 43, Attach. 11 [attaching Notice of Charge].)

After 30 days, Plaintiff was placed back on paid administrative leave and remained so until her termination from employment on May 14, 2013.

### 5. EEOC's Dismissal of Plaintiff's Charges

Meanwhile, on April 27, 2012, the EEOC mailed a Dismissal and Notice of Rights to Plaintiff, dismissing her charge and closing its file based on its determination that it was unable to conclude that the information established any violations of Title VII. In the letter accompanying the Dismissal and Notice of Rights, the EEOC advised Plaintiff as follows: "Your

---

[1] Section 75(3) of the N.Y. Civil Service Law provides as follows, in pertinent part: "Pending the hearing and determination of charges of incompetency or misconduct, the officer or employee against whom such charges have been preferred may be suspended without pay for a period not exceeding thirty days." N.Y. Civil Service Law § 75(3).

advocacy for female crime victims is not considered to be protected activity under any of the statutes that the Commission enforces, especially Title VII, because it is not related to employment discrimination."

Plaintiff admits that at no time did she ever complain to any employee, representative, Board Member or official of the County regarding gender discrimination, nor did she request that any corrective action be taken in response to the alleged gender discrimination.

### 6.    Plaintiff's Three Disciplinary Hearing Officers

On May 3, 2012, Corcoran wrote to Hearing Officer La Manna requesting on behalf of the County that the disciplinary hearing be closed to the public on the ground that a public hearing could endanger Swidowski, against whom Dredzinski had made death threats (given that Dredzinski would know exactly where she would be at a given date and time).

On May 10, 2012, Lovette opposed the request by letter, claiming that his client had a due process right to a public hearing, challenging Hearing Officer La Manna's authority to order a closed hearing, and stating that "[a]ny veil of secrecy that is thrown over the disciplinary hearing will be inapplicable to the federal civil rights action Ms. Birch intended to file."

On May 11, 2012, Corcoran sent an email message to Hearing Officer La Manna (with a copy of Lovett) stating that he had been contacted by a reporter who had stated that she had specific knowledge of the disciplinary charges against Plaintiff, and had indicated that she had communicated with Lovett.  (Dkt. No. 43, Attach. 16, at 6, 11 [attaching email messages].) Corcoran further stated,

> I am concerned about this development since it comes at a time when the County has a motion pending to conduct the hearing in private for all the good and valid reasons stated in my letter motion.

> I am respectfully asking you to intervene and order whatever relief you believe is warranted to protect the integrity of this proceeding and to not permit the County's motion to be undercut by efforts to manipulate the media.

(*Id*. at 11.)

In response, later that day, Hearing Officer La Manna sent an email to both counsel stating, inter alia, "In light of this development, I am ruling that until further notice from me, there is to be no talking, correspondence with or giving of any information to the press by anyone involved in this matter. NONE." (Dkt. No. 43, Attach. 18, at 10-11 [attaching email message].)

On May 12, 2012, Lovett sent an email message to Hearing Officer La Mana (with a copy to Corcoran), stating as follows:

> Ms. La Manna: I am afraid the First Amendment trumps you. If you can provide me with some case law on the basis of which you think you, as a Section 75 hearing officer, can issue a prior restraint on the exercise of First Amendment protected speech I would appreciate that.

(Dkt. No. 43, Attach. 18, at 10 [attaching email message].)

On May 18, 2012, La Manna recused herself from acting as Hearing Officer on the case.[2]

On June 14, 2012, the Board of Supervisors designated a second hearing officer, David T. Garvey, Esq.

On June 20, 2012, Plaintiff filed a Summons and Complaint in this action.

On July 12, 2012, Corcoran sent a letter to Lovett addressing three issues. First, the County withdrew its request for a closed hearing, stated its intent not to renew that request, and

---

[2]       On May 14, 2012, Lovett had sent an email message to Hearing Officer La Mana (*without* a copy to Corcoran) requesting a response to his prior request for case law. (Dkt. No. 43, Attach. 16, at 7 [attaching email message].) On May 15, 2012, Hearing Officer La Manna had sent an email message to Lovett (with a copy to Corcoran) chastising him for the ex parte nature, and disrespectful tone, of his email message of May 14. (Dkt. No. 43, Attach. 16, at 7 [attaching email message].)

stated its understanding that Hearing Officer La Manna's directive to refrain from media comments was intended merely to preserve the status quo until the request for a closed hearing was decided (and was thus no longer in effect). (Dkt. No. 43, Attach. 17, at 2 [attaching page "1" of Ltr. from Corcoran dated July 12, 2012].)

Second, Corcoran addressed Becker's letter to Plaintiff dated November 29, 2011, clarifying that the request in that letter (i.e., that Plaintiff refrain from contacting her "staff or other County employees/officials/Board members" with questions while on leave) was not intended to prevent her "from speaking to anyone as a concerned citizen about any matter of public concern" but was intended only to protect the integrity of the investigation while it was pending. Moreover, Corcoran stated, "The request . . . was addressed to questions and not statements." (*Id*.)

Third, because the investigation was complete, there was no limitation on Plaintiff's speech in effect. "In sum," stated Corcoran, "Ms. Birch should not view herself [as] . . . prevented from communicating in any lawful fashion with others on any matter of legitimate public concern or to prepare her defense to the Section 75 charge." (Dkt. No. 43, Attach. 17, at 3 [attaching page "2" of Ltr. from Corcoran dated July 12, 2012].)

On August 17, 2012, Lovett sent a letter responding to Corcoran's letter. In his response, Lovett characterized Corcoran's letter as a "self-serving letter [and] a meritless attempt to re-write history in a vain attempt to partially insulate your client from liability in Karen Birch's federal action for damages." In addition, Lovett stated Plaintiff's position that (1) La Manna's "gag order" was still "manifestly in effect" because Hearing Officer Garvey lacked authority to rescind it, and (2) Corcoran's representation that no speech limitation was in effect was unacceptable, and Plaintiff must be notified of that fact in writing by Becker, Wayland-Smith and Aylward.

On August 20, 2012, Hearing Officer Garvey sent a letter to both counsel, advising them that any issues regarding "gag orders" (including whether La Manna's order was still in effect, whether it had affected the prosecution or defense of the action, and whether the so-called "gag orders" of Becker, Wayland-Smith and Aylward were still in effect) should be discussed and resolved before the first scheduled day of the Section 75 hearing.  As result, he directed the parties to be prepared to discuss these issues on August 29, 2012, and invited them to call him if they wanted to resolve the issues before that time.  (Dkt. No. 43, Attach. 19, 2-3 [attaching pages "1" and "2" of Ltr. from Garvey dated Aug. 20, 2012].).

At some point between August 20, 2012, and September 14, 2012, Neal Rose, as counsel for Swidowski, filed an application to have her hearing testimony taken in a closed courtroom.  (Dkt. No. 43, Attach. 24, at ¶ 30 [Becker Decl.].)  The County took no position on the application.  (*Id.*)

On September 14, 2012, Hearing Officer Garvey conducted a preliminary hearing on the issue of whether the portion of the disciplinary hearing involving Swidowski's testimony should be closed.  (*Id.* at ¶ 31.)  Before making a determination on that issue, Hearing Officer Garvey recused himself.  (*Id.*; Dkt. No. 43, Attach. 20, at 2 [attaching page "1" of Hearing Opinion].)

On October 29, 2012, the Board of Supervisors designated a third Hearing Officer, John T. Trela.  (Dkt. No. 43, Attach. 20, at 2 [attaching page "1" of Hearing Opinion and Recommendation]; Dkt. No. 43, Attach. 24, at ¶ 32 [Becker Decl.]; Dkt. No. 43, Attach. 21, at 3 [attaching page "2" of Notice of Determination].)

### 7.    Plaintiff's Disciplinary Hearing

Hearing Officer Trela heard testimony in Plaintiff's Section 75 hearing on November 19, 2012, November 20, 2012, January 16, 2013, and January 23, 2013.  (Dkt. No. 43, Attach. 24, at

¶ 33 [Becker Decl.]; Dkt. No. 43, Attach. 21, at 2-3 [attaching pages "1" and "2" of Notice of Determination].)  The County presented five witnesses: Swidowski; Joanne Miller and Angela DiMichele (members of the Probation Department where Plaintiff was the Director); Dennis Dougherty (an investigator for the New York State Police); and Robert Mascari (an Assistant District Attorney for Madison County).  Plaintiff was the only witness on her behalf.

Following the close of proof, Hearing Officer Trela issued a written Opinion and Recommendation dated April 15, 2013, finding Plaintiff guilty of Charges 1, 2 and 3.  As the appropriate penalty, he recommended Plaintiff's termination from employment by the County, as authorized by Section 75 of the N.Y. Civil Service Law.

## 8.     Board's Termination of Plaintiff

With the exception of Becker and Ball (who recused themselves because they had been involved in the investigation leading to the bringing of charges against Plaintiff), the Board of Supervisors met on April 25, 2013, to review the evidence that had been presented at the hearing.  Each member of the Board had a full copy of the hearing transcript and the Opinion and Recommendation of Hearing Officer Trela; and the exhibits received into evidence at the hearing were available.  (Dkt. No. 43, Attach. 21, at 4 [attaching page "3" of Notice of Determination]; Dkt. No. 43, Attach. 24, at ¶ 38 [Becker Decl.]; Dkt. No. 43, Attach. 25, at ¶ 3 [Bargabos Decl.]; Dkt. No. 43, Attach. 26, at ¶ 3 [Bono Decl.]; Dkt. No. 43, Attach. 27, at ¶ 3 [Bradstreet Decl.]; Dkt. No. 43, Attach. 28, at ¶ 3 [Carinci Decl.]; Dkt. No. 43, Attach. 29, at ¶ 3 [Cary Decl.]; Dkt. No. 43, Attach. 30, at ¶ 3 [Degear Decl.]; Dkt. No. 43, Attach. 31, at ¶ 3 [DiVeronica Decl.]; Dkt. No. 43, Attach. 32, at ¶ 3 [Goldstein Decl.]; Dkt. No. 43, Attach. 33, at ¶ 3 [Henderson Decl.]; Dkt. No. 43, Attach. 34, at ¶ 3 [Monforte Decl.]; Dkt. No. 43, Attach. 35, at ¶ 3 [Rafte Decl.]; Dkt. No. 43, Attach. 36, at ¶ 3 [Reinhardt Decl.]; Dkt. No. 43, Attach. 37, at ¶ 3 [Salka

Decl.]; Dkt. No. 43, Attach. 38, at ¶ 3 [Stepanski Decl.]; Dkt. No. 43, Attach. 39, at ¶ 3 [Suits Decl.]; Dkt. No. 43, Attach. 43, at ¶ 3 [Coye Decl.].)

On May 14, 2013, the Board of Supervisors adopted Hearing Officer Trela's finding of fact, his determination as to Plaintiff's guilt or innocence on each individual charge, and his recommendation of termination as a penalty. Abstaining from the vote were not only Becker and Ball but Supervisors Eve Ann Shwartz and James Goldstien, who had not reviewed the entire record of the hearing. (Dkt. No. 43, Attach. 24, at ¶ 38 [Becker Decl.]; Dkt. No. 43, Attach. 32, at ¶ 4 [Goldstein Decl.].)

Plaintiff has since challenged the determination of the Board of Supervisors' adopting of Hearing Officer Trela's Opinion and Recommendation, in an Article 78 proceeding in New York State Supreme Court, which is still pending at this time.

### C.    Parties' Briefing on Defendants' Motion

#### 1.    Defendants' Memorandum of Law in Chief

Generally, Defendants' memorandum of law in chief assert five arguments. (*See generally* Dkt. No. 43, Attach. 40 [Defs.' Memo. of Law].)

First, Defendants argue, Plaintiff's First Cause of Action (claiming that various Defendants violated her right to due process under the Fourteenth Amendment by reviewing evidence against her *ex parte*, and deciding the issue of her termination, before conducting her disciplinary proceeding) must be dismissed because, based on the current record, it is uncontroverted that (a) Plaintiff was afforded notice of the charges and evidence against her in April 2012, and an opportunity to be heard in November 2012 and January 2013), (b) the Board performed the referenced review of the evidence in February 2012 as an investigative body, not as an adjudicative body (as permitted under the law), (c) the Supervisors voted to bring charges

against Plaintiff in April 2012 based on the information they learned from the investigation, (d) Becker and Ball recused themselves from the vote on whether to terminate Plaintiff, and (e) the vote occurred only after the Board members independently reviewed the hearing record. (*Id.* at 10-18 [attaching pages "4" through "12" of Defs.' Memo. of Law].)

Second, Defendants argue, Plaintiff's Second Cause of Action (claiming that various Defendants violated her right to free speech under the First Amendment by requesting, embracing, adopting and ratifying the gag order placed on her by a hearing officer in May 2012) must be dismissed, because, based on the current record, it is uncontroverted that the County merely requested an order closing the hearing to the public (a request that was never granted and that the County later withdrew). (*Id.* at 18-19 [attaching pages "12" and "13" of Defs.' Memo. of Law].)

Third, Defendants argue, Plaintiff's Third Cause of Action (claiming that Defendants violated her right to free speech under the First Amendment, and to due process under the Fourteenth Amendment, by preventing her, through gag orders of November 2011 and February 2012, from communicating with County personnel on a matter of public concern, and preparing a defense to the disciplinary charges) must be dismissed, because, based on the current record, it is uncontroverted that (a) the "gag orders" imposed by Becker in November 2011 and Wayland-Smith in February 2012 were so narrow as to never preclude Plaintiff from discussing any issue of public concern in her personal capacity or preparing a defense, (b) the "gag orders" were intended merely to protect the integrity of a pending investigation, and (c) in any event, the "gag orders" expired upon the completion of the investigation (as expressly stated on July 2012), and were never accompanied by a threat of punishment. (*Id.* at 18-22 [attaching pages "12" through "16" of Defs.' Memo. of Law].)

Fourth, Defendants argue, Plaintiff's Fourth and Fifth Causes of Action (claiming that Defendant County of Madison violated her right to be free from retaliation under Title VII by suspending her for 30 days without pay, and filing disciplinary charges against her, for having engaged in a protected activity) must be dismissed, because, based on the current record, it is uncontroverted that (a) there was no protected activity (given that her advocacy for female crime victims was not related to employment discrimination), and (b) in any event, there was no causal connection between the alleged protected activity and adverse action (given that the investigation was under way months before her assertion of the EEOC charge, the County was unaware of the alleged protected activity when it imposed the unpaid suspension, and the unpaid suspension was expressly permitted by N.Y. Civil Service Law § 75). (*Id.* at 23-27 [attaching pages "17" through "21" of Defs.' Memo. of Law].)

Fifth, Defendants argue, Plaintiff is not entitled to punitive damages on her First, Second and Third Causes of Action, because, based on the current record, it is uncontroverted that none of the individual Defendants was vindictive or callously indifferent to Plaintiff. (*Id.* at 27-28 [attaching pages "21" and "22" of Defs.' Memo. of Law].)

### 2. Plaintiff's Opposition Memorandum of Law

Generally, Plaintiff's opposition memorandum of law asserts three arguments. (*See generally* Dkt. No. 46 [Plf.'s Opp'n Memo. of Law].)

First, Plaintiff argues, as a threshold matter, Defendants' motion must be denied because they have violated Local Rule 7.1(a)(3) by failing to number any of the paragraphs of their Statement of Material Facts, and by failing to provide any record citations or accurate record citations in numerous of those paragraphs. (*Id.* at 5-6 [attaching pages "2" and "3" of Plf.'s Opp'n Memo. of Law].)

Second, Plaintiff argues, in the alternative, Defendants' motion must be denied as to Plaintiff's First Amendment claim, because (a) in his letter to Plaintiff dated November 29, 2011 "Becker did not limit in any way the subject matters about which Plaintiff was forbidden to pose questions," and at no time did Becker subsequently rescind that gag order, (b) on November 29, 2011, Wayland-Smith and Aylward orally instructed Plaintiff that she was forbidden from engaging in any communication whatsoever with any members of the Probation Department staff, (c) at that time, Becker directed other employees not speak with Plaintiff, and (d) in his email message dated May 11, 2012, Corcoran requested the gag order that La Manna subsequently issued (when he asked for "whatever relief you believe is warranted to protect the integrity of this proceeding"). (*Id.* at 6-15 [attaching pages "3" through "12" of Plf.'s Opp'n Memo. of Law].)

Third, Plaintiff argues, Defendants' motion must be denied as to Plaintiff's punitive damages request because (a) it is premature and (b) based on the current record, admissible record evidence exists from which a rational fact finder could award such punitive damages. (*Id.* at 15-17 [attaching pages "12" through "14" of Plf.'s Opp'n Memo. of Law].)

### 3. Defendants' Reply Memorandum of Law

Generally in their reply, Defendants assert four arguments. (*See generally* Dkt. No. 47, Attach. 2 [Defs.' Reply Memo. of Law].)

First, Defendants argue, Defendants' Statement of Material Facts should not be stricken, because Plaintiff's ability to respond was not impaired by the deficiencies for the following reasons: (a) the paragraphs (which we inadvertently not numbered) were each separated, thus enabling Plaintiff to respond to each of them in an organized fashion; (b) in any event, the error was subsequently corrected through the submission of a numbered Statement of Material Facts;

(c) as for Defendants' omission of record citations in support of certain factual assertions, the record citations were not necessary because the factual assertions, which were non-controversial, were offered merely to provide a clear and complete chronology of events giving rise to this action; and (d) in any event, Defendants denied those particular factual assertions, thus already providing them with a remedy. (*Id.* at 4-6 [attaching pages "1" through "3" of Defs.' Reply Memo. of Law].)

Second, Defendants argue, because Plaintiff has not otherwise opposed Defendants' request for summary judgment regarding her due process and retaliation claims, the motion should be granted regarding those claims. (*Id.* at 6-8 [attaching pages "3" through "5" of Defs.' Reply Memo. of Law].)

Third, Defendants argue, Plaintiff has not created a genuine dispute of material fact regarding her First Amendment claims because (a) her late-blossoming assertions regarding the communications from November 2011 contradict the allegations of her Complaint, her own prior deposition testimony (impermissibly) and the other record evidence, and (b) she has no standing to assert a First Amendment claim on behalf of other employees. (*Id.* at 8-13 [attaching pages "5" through "10" of Defs.' Reply Memo. of Law].)

Fourth, Defendants argue, their motion for summary judgment with regard to Plaintiff's request for punitive damage is neither premature nor erroneous. (*Id.* at 13-14 [attaching pages "10" and "11" of Defs.' Reply Memo. of Law].)

## II.     RELEVANT LEGAL STANDARDS

### A.     Legal Standard Governing Motions for Summary Judgment

Because the parties to this action have demonstrated, in their memorandum of law, an accurate understanding of the legal standard governing a motion for summary judgment, the

Court will not recite that well-known legal standard in this Decision and Order, but will direct the reader to the Court's decision in *Pitts v. Onondaga Cnty. Sheriff's Dep't*, 04-CV-0828, 2009 WL 3165551, at *2-3 (N.D.N.Y. Sept. 29, 2009), which accurately recites that legal standard.

**B.    Legal Standards Governing Plaintiff's Claims**

Because the parties to this action have demonstrated, in their memoranda of law, an accurate understanding of the relevant points of law contained in the legal standards governing Plaintiff's claims, the Court will not recite, in their entirety, those legal standards in this Decision and Order, which is intended primarily for review by the parties.  (*See generally* Dkt. No. 43, Attach. 40 [Defs.' Memo. of Law]; Dkt. No. 46, Attach. 43 [Plf.'s Opp'n Memo. of Law]; Dkt. No. 47, Attach. 2 [Defs.' Reply Memo. of Law].)

**III.    ANALYSIS**

**A.    Whether Defendants' Motion for Summary Judgment Should Be Denied Based on Their Failure to Comply with Local Rule 7.1(a)(3)**

After carefully considering the matter, the Court answers this question in the negative for the reasons stated in Defendants' reply memorandum of law.  *See, supra,* Part I.C.3. of this Decision and Order.

The Court would add only two points.  First, "[a] district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules."  *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 73 (2d Cir. 2001).  Second, "while a court is not required to consider what the parties fail to point out in their . . . [S]tatements [of Material Fact], it may in its discretion opt to conduct an assiduous review of the record . . . ." *Holtz*, 258 F.3d at 73.

For all of these reasons, the Court rejects Plaintiff's threshold argument for denial of Defendants' motion.

**B.** **Whether Plaintiff's First Cause of Action (Claiming that Various Defendants Denied Her Due Process Under the Fourteenth Amendment by Reviewing Evidence *Ex Parte* and Prejudging Her Termination) Must Be Dismissed**

After carefully considering this matter, the Court answers this question in the affirmative for the each of the numerous reasons stated in Defendants' memoranda of law. *See, supra,* Parts I.C.1. and I.C.3. of this Decision and Order. The Court would add only two points.

First, because Plaintiff has failed (in her opposition memorandum in law) to specifically oppose Defendants' arguments for the dismissal of this claim, Defendants' burden with respect to those arguments is lightened such that, in order to succeed on them, Defendants need show only that the arguments possess facial merit, which has appropriately been characterized as a "modest" burden. *See* N.D.N.Y. L.R. 7.1(b) (3) ("Where a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein . . . ."); *Rusyniak v. Gensini*, 07-CV-0279, 2009 WL 3672105, at * 1, n.1 (N.D.N.Y. Oct. 30, 2009) (Suddaby, J.) (collecting cases); *Este-Green v. Astrue*, 09-CV-0722, 2009 WL 2473509, at *2 & n.3 (N.D.N.Y. Aug. 7, 2009) (Suddaby, J.) (collecting cases). The Court finds that, at the very least, Defendants' have met this modest burden.

Second, implicit in Plaintiff's claim is an assumption that she possessed a due process right to notice and an opportunity to be heard *before disciplinary charges were filed against her*. The Court can find no such point of law in the legal standard governing a due process claim. *See Tarantino v. City of Hornell*, 615 F. Supp.2d 102, 120 (W.D.N.Y. 2009) ("Plaintiff has cited no authority that he is entitled to notice or an opportunity to be heard before charges are brought against him. All that is required is that he receive notice and an opportunity to be heard before being *deprived* of a protected liberty or property interest.") (emphasis in original), *aff'd*, 378 F.

App'x 68 (2d Cir. 2010), *abrogated on other grounds*, *Analytical Diagnostic Labs, Inc. v. Kusel*, 626 F.3d 135 (2nd Cir. 2010).

For all of these reasons, Plaintiff's First Cause of Action is dismissed.

**C.** **Whether Plaintiff's Second Cause of Action (Claiming that Various Defendants Violated Her Right to Free Speech Under the First Amendment Regarding the Gag Order Placed on Her in May 2012) Must Be Dismissed**

After carefully considering this matter, the Court answers this question in the affirmative for the each of the numerous reasons stated in Defendants' memoranda of law. *See, supra,* Parts I.C.1. and I.C.3. of this Decision and Order. The Court would add only the following analysis.

For the sake of brevity, the Court will not linger on the tenuous nature of Plaintiff's reliance on the fact that, on May 11, 2012, Corcoran (vaguely) requested of La Manna "whatever relief you believe is warranted to protect the integrity of this proceeding." Nor will the Court linger on the fact that, the very next day, Plaintiff's counsel made clear Plaintiff's understanding that La Manna did not actually possess the power to issue a binding "gag order."

More important is the fact that, on July 12, 2012, Corcoran stated the County's understanding that Hearing Officer La Manna's directive (to refrain from media comments) was no longer in effect because it had been issued merely to preserve the status quo until the request for a closed hearing was decided (and that request had been withdrawn). As Corcoran stated, "In sum, Ms. Birch should not view herself [as] . . . prevented from communicating in any lawful fashion with others on any matter of legitimate public concern or to prepare her defense to the Section 75 charge." Furthermore, on August 20, 2012, Hearing Officer Garvey invited Plaintiff's counsel to call him if he wanted to resolve any misunderstanding about the "gag order" before August 29, 2012; however, the record contains no admissible evidence establishing that any such call occurred.

Simply stated, if there was a brief period of time during which Plaintiff was prohibited by one or more hearing officers from speaking to the press about her pending disciplinary proceeding, the County was not sufficiently involved in that prohibition. Not surprisingly, the Court can find no cases in which a party has been liable under the First Amendment (under an aiding and abetting theory, or any other theory) for making a request that results in the issuance of an improper a "gag order" on an opposing party.

For all of these reasons, Plaintiff's Second Cause of Action is dismissed.

**D.    Whether Plaintiff's Third Cause of Action (Claiming that Defendants Violated Her Right to Free Speech and Due Process Under the First and Fourteenth Amendments, Because of the Gag Orders of November 2011 and February 2012) Must Be Dismissed**

After carefully considering this matter, the Court answers this question in the affirmative for the each of the numerous reasons stated in Defendants' memoranda of law. *See, supra,* Parts I.C.1. and I.C.3. of this Decision and Order. The Court would add only five points.

First, to the extent that this cause of action asserts a due process claim under the Fourteenth Amendment, because Plaintiff has failed (in her opposition memorandum in law) to specifically oppose Defendants' arguments for the dismissal of that due process claim, Defendants' burden with respect to those arguments is lightened such that, in order to succeed on them, Defendants need show only that the arguments possess facial merit. *See, supra,* Part III.D. of this Decision and Order. The Court finds that, at the very least, Defendants' have met this modest burden.[3]

---

[3]    The Court notes that, to the extent that this due process claim regards substantive due process rather than procedural due process, the claim must be analyzed under the standard appropriate to the First Amendment. *See United States v. Lanier*, 520 U.S. 259, 272, n.7 (1997) ("[I]f a constitutional claim is covered by a specific constitutional provision, such as the Fourth . . . Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the [more generalized notion of] substantive due process.").

Second, Plaintiff's argument about the broad nature of oral restriction casually imposed by Aylward and Wayland-Smith on November 29, 2011, disregards the limited nature of the written restriction formally imposed at the same time by the County Board of Supervisors Chairman (Becker).

Third, Plaintiff's argument that Becker's letter to her dated November 29, 2011, "did not limit in any way the subject matters about which Plaintiff was forbidden to pose questions" ignores three facts: (a) that Plaintiff was, pursuant to the express terms of the letter, free to engage in conversations with other County employees in which she did not "pose questions" (e.g., conversations in which she made statements, as recognized by Corcoran in his letter of July 12, 2012); (b) even if the letter did prohibit her from making statements to other County employees, the statements that she desired to make regarded her job and reputation, which did not implicate any matter of public concern;[4] and (c) that, in any event, because the directive was issued when the investigation was initiated, the directive implicitly expired upon the completion of the investigation (as also recognized by Corcoran in his letter of July 12, 2012).

Fourth, no admissible record evidence has been adduced that the restriction imposed by Wayland-Smith on February 27, 2012, extended beyond communications concerning *the proposed separation agreement*.

Fifth, Plaintiff's counsel's refusal to accept defense counsel's written representation of July 12, 2012, that his clients' directives were no longer in effect (having expired upon the completion of the investigation) was without merit. As a threshold matter, it must be

_____

[4]        *Cf. Rutherford v. Katonah-Lewisboro Sch. Dist.*, 670 F. Supp.2d 230, 248-49 (S.D.N.Y. 2009) ("[T]he only plausible inference that can be drawn is that Plaintiff wanted to talk to her union representative about her job and her reputation when they were under attack. As that conversation does not implicate any matter of public concern, I cannot see how any matter of public concern is implicated . . . .").

remembered that (a) on April 12, 2012, Becker advised Plaintiff, inter alia, that "[y]ou are entitled to a hearing on the above charges" pursuant to N.Y. Civil Service Law § 75,[5] and (b) pursuant to N.Y. Civil Service Law s 75(2), Plaintiff is entitled to "summon witnesses in his behalf. As a result, to construe the directive of November 2011 as surviving the notice of a hearing pursuant to N.Y. Civil Service Law § 75 would make no sense. Furthermore, it must be remembered that (a) Plaintiff knew that Corcoran represented Defendant County in labor and employment matters when the directives of November 2011 were issued,[6] (b) Plaintiff knew that Corcoran had attended the meeting of February 27, 2012, (c) Corcoran copied his letter of July 12, 2012, to Becker and Wayland-Smith, and (d) the record contains no indication that, between July 2012 and August 17, 2012 (when Plaintiff's counsel responded to the letter), Becker or Wayland-Smith retracted Corcoran's representation. *See Britto v. Salius*, 360 F. App'x 196, 199 (2d Cir. 2010) ("[Plaintiff] is bound by the actions of his retained counsel on his behalf.").

For all of these reasons, Plaintiff's Third Cause of Action is dismissed.

**E.**      **Whether Plaintiff's Fourth and Fifth Causes of Action (Claiming that Defendant County Violated Her Right to Be Free from Retaliation Under Title VII by Suspending Her Pay and Filing Disciplinary Charges Against Her, in Retaliation for Having Filed an EEOC Charge) Must Be Dismissed**

After carefully considering this matter, the Court answers this question in the affirmative for the each of the numerous reasons stated in Defendants' memoranda of law. *See, supra,* Parts I.C.1. and I.C.3. of this Decision and Order. The Court would add only two points.

First, because Plaintiff has failed (in her opposition memorandum in law) to specifically oppose Defendants' arguments for the dismissal of these retaliation claims, Defendants' burden

---

[5]      (Dkt. No. 43, Attach. 11, at 4 [attaching page "3" of Notice of Charge].)

[6]      (*See, e.g.,* Dkt. No. 43, Attach. 2, at 143-44, 165 [attaching pages "142," "143" and "164" of Birch Depo. Tr.].)

with respect to those arguments is lightened such that, in order to succeed on them, Defendants need show only that the arguments possess facial merit. *See, supra,* Part III.D. of this Decision and Order. The Court finds that, at the very least, Defendants' have met this modest burden.

Second, the timing of Plaintiff's patently meritless EEOC charge (i.e., shortly before Plaintiff rejected the employment-separation agreement and was charged in a disciplinary proceeding) gives rise to an inference that the EEOC charge was designed to lay the foundation for a retaliation claim based on the filing of the disciplinary charges. This inference is strengthened when one considers (a) Plaintiff's counsel's meritless argument that Hearing Officer Garvey could not rescind Hearing Officer La Manna's "gag order," (b) Plaintiff's counsel's refusal to accept defense counsel's representation in July 2012 that the directives of November 2011 were no longer in effect, and (c) the fact that two hearing officers appear to have been driven to recuse themselves from Plaintiff's disciplinary proceeding. Simply stated, it is difficult not to infer that Plaintiff's counsel has, during many of the events giving rise to this action, attempted to *manufacture* various claims against Defendants. However, the Court will not draw that inference, out of respect to counsel as a zealous advocate for his client.

For all of these reasons, Plaintiff's Fourth and Fifth Causes of Action are dismissed.

**F.      Whether Plaintiff's Request for Punitive Damages on Her First, Second and Third Causes of Action Must Be Dismissed**

Because adequate grounds exist upon which to base the dismissal of Plaintiff's Complaint in its entirety, the Court need not, and does not, address the merits of this alternative argument.

**ACCORDINGLY**, it is

**ORDERED** that Defendants' motion for summary judgment (Dkt. No. 43) is **<u>GRANTED</u>**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated: June 4, 2014
      Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge